BUSH, Appellant, v. PEIRSOL et al.

Division Two, July 2, 1904.

1. **DOWER: Release: Conduit.** Where the husband is asserting title to land which has been sold in a proceeding in bankruptcy, a joint deed thereafter made by him and his wife, in which she relinquishes her dower, is a release of that dower and bars her, after her husband's death, from asserting dower therein. And in such case it does not matter that the relinquishment of the dower to the owner of the fee was made through a third party as a mere conduit.

2. ————: ————: **To Owner of Fee.** Our statute does not confine the wife's power of relinquishing her inchoate dower, to a release thereof to the owner of the fee.

Appeal from Monroe Circuit Court.—*Hon. D. H. Eby,* Judge.

AFFIRMED.

*J. R. Reynolds* and *W. T. Ragland* for appellant.

(1) "Proof of the marriage, death of the husband, title in the husband to the land in question during the marriage, the possession of the husband under that title, his subsequent conveyance of the premises in which the wife did not join, the acquisition of this title by defendant and his possession thereunder at the time of the suit, makes a complete case in a suit by his widow for dower." Cazier v. Hinchey, 143 Mo. 203. (2) At common law, and in this State until the revision of 1889, a widow could not, at law, before assignment, alienate her dower right by conveyance or assignment to one holding no interest in the land. She could release her claim to dower to the *terre tenant* so as to bar herself, but she could invest no other person with the legal title thereto, until it had been assigned. Sell v. McAnaw, 138 Mo. 267; Brawford v. Wolfe, 103 Mo. 400; Saunders v. Blythe, 112 Mo. 1; 2 Scrib. on Dower, sec. 42.

*T. P. Bashaw, J. H. Whitecotton* and *J. C. Piersol* for respondents.

(1) Bush's homestead rights and his wife's inchoate right of dower and homestead in the lands all passed by the deed of trust and were not in existence at the time he was adjudged a bankrupt, and hence. there were no exemptions, and therefore the whole title to all the lands vested in the assignee. Scruby v. Norman, 91 Mo. App. 517; Benoist v. Darby, 12 Mo. 196; Peery v. Carnes, 86 Mo. 652. (2) The right to dower in Missouri is a statutory one and not a common law right, nor was the statute of Westminster, concerning dower, ever in force in Missouri. Chouteau v. Railroad, 122 Mo. 375; Lecompte v. Walsh, 9 Mo. 551. It follows that the English common law doctrine that an inchoate right of dower is not assignable, is not a part of the common law of Missouri, simply because it is a part of the

common law of England. Riddick v. Walsh, 15 Mo. 519;
Blevins v. Smith, 104 Mo. 583; Crosby v. Bank, 107
Mo. 443; secs. 901 and 905, R. S. 1899; Goodman v. Sim-
mons, 113 Mo. 122.    (3)    The conveyance of plaintiff
and her husband to Mrs. Peake, under the uncontra-
dicted facts in the case, was tantamount to a conveyance
to the Peirsols, the owners of the fee, and therefore
operated as a release of her dower, if not good as an
assignment.    Perry on Trusts, sec 147; Hill on Trusts,
97; 2 Johns. Ch. 540; Valle v. Bryan, 19 Mo. 423;
Rankin v. Harper, 23 Mo. 579; Darrier v. Darrier, 58
Mo. 222; Plumb v. Cooper, 121 Mo. 668; Boyd v. Mam-
moth Spring, etc., 137 Mo. 482.

GANTT, P. J.—This is an action for the assign-
ment of dower in certain real estate in Monroe county,
Missouri.

The plaintiff is the widow of William P. Bush, who
died in 1900.   Plaintiff and William P. Bush were mar-
ried October 15, 1867.   In 1873, William P. Bush owned
large tracts of land in Monroe, Ralls and Marion coun-
ties of this State, and was largely indebted to various
persons.   On the twenty-ninth of October, 1873, Wil-
liam P. Bush and his wife, the plaintiff herein, exe-
cuted a deed of trust to Samuel Logan as trustee to se-
cure certain of his creditors to the amount of $41,205,
including all his lands and the property in which plain-
tiff now seeks to have dower assigned.   When this deed
of trust was filed certain unsecured creditors filed a pe-
tition in bankruptcy in the United States District Court
for the eastern district of Missouri.   He was adjudged
a bankrupt and William Dudley was duly appointed as-
signee and all the lands, including that in controversy
in this suit, were duly assigned to him by Enos Clark,
register in bankruptcy.   The homestead of Mr. and
Mrs Bush was duly set off to them.   Afterwards on the
sixth of February, 1882, the United States District
Court, upon petition of said assignee and with the con-

sent of all the creditors of said bankrupt who had there-tofore made proof of their claims against his estate as secured creditors, holding the security of liens upon the lands hereinafter and in said petition described, made an order directing the sale of all said lands at public auction, free and clear of all encumbrances, except taxes for the year 1882. The assignee having duly adver-tised, proceeded to sell said lands, and among other tracts on the sixteenth day of March, 1882, offered for sale the tract of land in which dower is claimed in this suit, containing in all about three hundred and twenty acres, and Jacob Peirsol and John C. Peirsol being the highest bidders at the price of $6,966, the same was knocked down to them and said sale was confirmed and said purchasers having paid their bid, the assignee on the seventh day of April, 1882, conveyed the same to them by an assignee's deed which was afterward duly recorded. After purchasing the same the said Jacob and John C. Peirsol subdivided that part of their pur-chase lying north of the M. K. & T. Railway, and made an addition thereof to the town of Monroe City known as Peirsol's addition.

After said sale William P. Bush and wife asserted that said sale for some reason had not conveyed his title and that plaintiff still had her inchoate dower therein and said claim seriously impeding the sale of the lots in said addition, the said Jacob and John C. Piersol ne-gotiated through one James M. Johnson, the agent of William P. Bush and his wife, for the purchase of all their right, title and interest in and to all the lands bought by said Peirsol at said assignee's sale, and it was agreed that for the sum of $675 said William P. Bush and his wife would quitclaim all their interest in said lands to said Peirsols, and thereupon, at the request of said John C. Peirsol, said William P. Bush and his wife, the plaintiff herein, did by their quitclaim deed of date November 14, 1887, convey said lands to one M. E. L. Peake, the sister-in-law of John C. Peirsol,

which deed conveyed the lands in which Mrs. Bush now claims dower. Mrs. Peake lived in Lyons county, Kansas, at the time, and within three days thereafter made, executed and delivered her deed to said lands to John C. Peirsol at his request, and in pursuance of her promise theretofore made so to do upon the request of said John C. Peirsol. Mrs Peake paid no part of the consideration, but the whole of the $675 was paid by John C. Peirsol to said Johnson and was by him paid directly to Mrs. Bush.

At the time of the purchase it was known to Johnson, the agent of Wm. P. Bush and wife, that John C. Peirsol was the purchaser and Mrs. Bush made no denial of Johnson's testimony that she received the money for said property. Mrs. Bush stands upon the proposition that her dower right was not the subject of grant; that all that she could do was to release; that at the time she and her husband made the quitclaim to Peirsol, her husband had no estate and the deed passed no estate to Mrs. Peake, and Mrs. Peake had no estate in the land prior to the execution of the deed to her and was not in possession, and therefore plaintiff could not release her dower to her. The evidence is absolutely convincing that Mrs. Peake was a mere conduit through whom the release of plaintiff's dower was made to John C. Piersol. This is the testimony of Peirsol, and it is fully corroborated by the evidence of Johnson and the contemporary execution of the deed from Mrs. Peake to John C. Peirsol, so that without discussing other phases of this case, the question arises, did or did not Mrs. Bush's joining in her husband's deed of November 14, 1887, and relinquishing her dower in the lands in suit have the effect of barring her dower as against said John C. Peirsol and his codefendants claiming under him?

The circuit court held that the foregoing facts operated as a relinquishment of plaintiff's dower in and to the lands in controversy to John C. Peirsol, the owner

in fee of said lands and in possession thereof, it having been mutually agreed that Jacob Peirsol had conveyed all his interest in said lands to John C. Peirsol.

By sections 901 and 902, Revised Statutes 1899, or sections 669 and 670, Revised Statutes 1879, the laws in force at the time of the execution and delivery of the deed of Mr. Bush and wife to Mrs. Peake, it was provided: ''A husband and wife may convey the real estate of the wife, and the wife may relinquish her dower in the real estate of her husband, by their joint deed, acknowledged and certified as herein provided;'' and, ''A married woman may convey her real estate, or relinquish her dower in the real estate of her husband, by a power of attorney authorizing its conveyance, executed and acknowledged by her jointly with her husband, as deeds conveying such real estate by them are required to be executed and acknowledged.''

Whatever the common law was as to the wife's incapacity to *grant* her inchoate dower, as distinguished from her right to *release* it to the owner of the fee, this statute clearly gives her the power by a joint deed with her husband to relinquish it.    There can be no doubt that in this case she did join in a deed with her husband and did relinquish her dower to the real estate in controversy to the grantee Mrs. Peake.

Her husband was openly asserting title to the property and she, a dower in it, and they assumed the right to convey it and by their joint deed, executed in every particular as the statute required, did convey it to Mrs. Peake and the plaintiff relinquished her dower therein.

The grantee under that deed then immediately conveyed it to John C. Peirsol, the person in possession and claiming the fee simple interest by the deed of the assignee in bankruptcy.    The quitclaim then contained operative words of conveyance, and whether it carried a good title to the land or not it is a complete estoppel by deed as to plaintiff's dower.    It does not lie in the mouth of her husband or herself to say that nothing

passed by a deed thus executed in strict compliance with the statute enabling her so to do. In the absence of such a statute she could not have relinquished or conveyed her dower, as during the coverture it was not an estate in the land, but by the terms of this statute she is empowered to do what at common law she could not have done. There are no words in the statute confining her power to relinquish her dower to the owner of the fee or the *terre tenant,* nor are we authorized to interpolate or supply such a restriction. But even if the right were confined to a relinquishment to the owner of the fee we think that such was the effect of her relinquishment in this case, because, as already said, it is clear that Mrs. Peake was a mere conduit in the transfer of the title to John C. Peirsol, the owner of the fee, and Mrs. Bush received the consideration for her dower interest directly from Peirsol through her agent, Mr. Johnson, and must be presumed to have had full knowledge that she was in fact releasing her dower to Peirsol. The circuit court took the proper view of the case and its judgment is affirmed.

All concur.